# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNEL JACKSON, | Case No.  1:24-cv-1027-KES-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| TYSON POUGE, et al., | (ECF No. 16) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Cornel Jackson ("Plaintiff") is a pretrial detainee proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  The Court screened Plaintiff's complaint, and Plaintiff was granted leave to amend.  (ECF No. 8.)  Plaintiff filed a first amended complaint. On September 15, 2025, the Court dismissed Plaintiff's first amended complaint for failure to state a cognizable claim, and granted Plaintiff leave to file a second amended complaint within thirty days.  (ECF No. 13.)  Plaintiff's second amended complaint is currently before the Court for Screening.  (ECF No. 16.)

## I.      Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

1

relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff alleges that the events in the complaint occurred while he was housed at the Madera County Jail.  Plaintiff does not list the defendants' names in the caption (Fed.R.Civ. P. 10), but identifies the following defendants in paragraph b-2 of the second amended complaint: (1) Chief Tyson Pouge, (2) Madera County, (3) Sgt. Rivera, (4) Cpl. Alva, (5) Taylor, (6) Guzman 1, (7) Guzman 2, (8) Sheilds,[1] (9) Cortes, (10) John Doe 1, (11) John Doe 2.  Plaintiff alleges as follows:

Plaintiff is a pretrial detainee at the time of the events.  Plaintiff alleges that he has exercised his rights by filing civil rights actions and defendants have "conspired in enforcing an underground custom of singling the Plaintiff out and placing him in situation where harm may result."  (ECF No. 16 at 3.)  Plaintiff alleges that each of the defendants are defendants in other

---

[1] Plaintiff refers to this defendant as both "Shield" and "Shields."  The Court adopts the spelling of "Shields" that Plaintiff first used.  The Court notes that any incorrect spelling of a defendant's name may result in a delay or inability to serve the defendant.

2

civil rights actions that have passed screening and/or have been settled.

On July 23, 2024, classification defendants John Doe 1 and John Doe 2 moved a documented aggressive inmate who has substantial record for violence and classified as an "extremely dangerous inmate," and who has assaulted every cellmate he has been house with. Immediately after Defendants' decision to move this inmate into Plaintiff's cell, the inmate began to demonstrate unusual behavior of being intentionally unsanitary and hostile. Plaintiff instantly informed the housing officer of the aggressive inmate's behavior. This nondefendant conveyed his knowledge of the inmate's violent history and disbelief that Defendants John Doe 1 and John Doe 2 would put the aggressive inmate in the dormitory housing, knowing of this violence.

Officer Moua realizing the risk, called his supervisor, Defendant Cpl. Alva to report and remedy the problem.  Defendant Cpl. Alva's response was to enforce an unwritten policy/or custom, that if he was forced to move the aggressive inmate, then he would be forced to implement a group punishment on the whole housing module with turning the building into administrative segregation.  Officer Moua advised Plaintiff that he documented the incident and emailed the classification Defendants John Doe 1 and John Doe 2, informing them that their decision was a wrong one and that the aggressive inmate needed to be housed single cell.  After raising his safety concerns with Officer Moua, Plaintiff returned to his dorm.  The aggressive inmate called Plaintiff a snitch and argumentatively called him a nigger.  Plaintiff was in fear but addressed the safety concern at the next shift.

On July 25, 2024, Plaintiff took his safety concern to Defendant Guzman 1 who was working the housing module.  Guzman 1 told Plaintiff that she understood Plaintiff's fears, as classification failures, knowing the inmate was a problem. Defendant Guzman 1 reported that Officer Moua documented the incident on the daily log and she knew what was going on.  Guzman 1 said that there was nothing she could do to remedy the problem.  Plaintiff explained that this put Plaintiff of serious risk and her failure to do anything was failure to protect.  Plaintiff alleges that Defendant Guzman 1 witnessed, during a facility count, the aggressive inmate push Plaintiff to the ground after taking a swing at the Plaintiff.  Defendant Guzman 1 opened the door and ordered Plaintiff to get up and for the aggressive inmate to "knock it off."  Plaintiff told

3

Guzman 1 that Plaintiff was trying to prevent harm.  Guzman 1 said to the Plaintiff to not be a snitch and closed the door.  Plaintiff requested a grievance which she denied and left.

On July 27, 2024, the inmate smeared feces all over the toilet.  Plaintiff asked the inmate to clean up after himself.  He quickly became violent.  Plaintiff alleges that Plaintiff took his safety concerns to the housing officer Defendant Taylor, who said that he knew about the aggressive inmate's behavior through Officer Moua and Defendant Guzman 1's daily logs.  Taylor provided Plaintiff with wipes and said there was not anything he could do to remedy the risk.  Taylor documented the incident by email but said there was not anything he could do about it.

On July 29, 2024, the aggressive inmate stated with racist rants and remarks about how "he hated niggers and how the only good nigger was a dead nigger."  He repeatedly asked Plaintiff if he wanted to be a dead nigger and pushed Plaintiff in front of Defendant officer Shields.  Defendant Shields was doing med pass and told the aggressive inmate that there wasn't any time for that shit.  Plaintiff told Defendant Sheilds, who is also a black man, what was going on and the degrading remarks that are being tossed around.  Defendant Shields advised he would document what he saw but that there wasn't anything he could do.  Defendant Shields said that "his supervisory defendant Rivera was well aware of the situation with the aggressive behavior demonstrated by the inmate and it's nothing she going to do then it's a dead issue deal with it." (ECF No. 16 at 7.)

On July 29, 2024, Plaintiff took his safety concerns to classification officer Defendant Guzman 2.  When Plaintiff told her that the ongoing issue had now passed words, she reported her disbelief that classification officer Defendants John Doe 1 and John Doe 2 would even move the aggressive inmate to a dorm setting, knowing his documented behavior and violent history.  Defendant Guzman 2 said she was the "classification officer who put him on the aggressive/and violent inmate watch list."  Guzman 2 reported that the supervisor Cpl. Alva was well aware of this inmate and his aggressive behavior.  Sgt. Rivera is a defendant in an open and ongoing civil rights action, case no. 1:24-cv-261 BAM and in other cases, was indifferent to Plaintiff's safety concerns.  Plaintiff expressed how he consistently told the above listed defendants about his

4

safety concerns and how Defendants omissions were deliberate indifference and was going to get someone assaulted.  Sgt. Rivera was reported in detail the physical incidents and racist threats made.  The aggressive inmate watched Plaintiff convey his safety concerns to the sergeant.

On July 30, 2024, Plaintiff took his safety issued to defendant Cortes, who acknowledges the facts that the issue was well documented with the daily logs and said that Defendants John Doe 1 and John Doe 2 dropped the ball by their decision to move this inmate into a dorm setting. Cortes agreed it was a serious risk but that supervisors who have full knowledge don't do anything, there were nothing she could do.

During this time, Plaintiff was a housing module porter where his job was to make sure every inmate received a dinner tray and collect all trays to be sent to the kitchen for cleaning.  On August 1, 2024, the aggressive inmate took the dinner tray from an 83 year old elderly dormmate who the aggressor referred to as a child molester.   Plaintiff reported the incident to the module officer.  Plaintiff doing his job and following orders instantly intervened and took the tray to give it back to the elderly cellmate. The aggressive inmate called Plaintiff a snitch and rushed Plaintiff, physically assaulting him striking him in his face and ear.  Plaintiff alleges that the attack has permanently altered his life where he still hears sounds in his ear when he talks and popping sounds when he chews which cause pain.

Plaintiff alleges that the Madera County Jail is a small institution with only 400 inmates. As a result of Plaintiff's legal activism, he is specifically targeted.  Plaintiff alleges that administrators inform new hired deputies and officers and officers who have worked for years, and have meetings about Plaintiff and how to subject him to atypical treatment and hardships. The defendant disregarded the repeated reports of safety concerns and retaliated against him for his well litigated civil rights actions that have passed screening and are proceeding to trial.  Each defendant logged each incident and failed to take reasonable measures to prevent the risk of harm.

Plaintiff alleges that Defendants demonstrated a custom of discrimination against Plaintiff through officer daily logs where any threat reported by other inmates in the housing module was remedied immediately.  Plaintiff alleges there was a meeting of the minds because Plaintiff exercised his rights to seek redress through the courts and inmate grievance system.

The brutal attack Plaintiff suffered was a result of defendants' failures were under the command of Chief Tyson Pouge and are employees of Defendant Madera County.  Plaintiff alleges Sgt. Rivera, Cpl. Alva, Guzman 1, Guzman 2, Taylor, Shields, Cortes, John Doe 1 and John Doe 2 violated California Title 15 and facility rules and regulations under sections 3271, 3269.  These violations implement training and the omissions establish the failure to protect was intentional.  Plaintiff seeks supervisory liability in this action as to Sgt. Rivera and Cpl. Alva for their personal participation where they both were contacted by defendants and Plaintiff to prevent physical harm.  The inaction by the supervisors resulted in Plaintiff being physically assaulted.

As remedies, Plaintiff seek compensatory, punitive, general, and nominal damages and that defendants receive adequate training and supervisory training.

**III.   Discussion**

**Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  *Corales v. Bennett*, 567 F.3d at 570.  Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation."  *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be

6

specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

Plaintiff alleges that supervisory liability exists against Madera County, Chief Tyson Pouge, Capt. Rodriguez, Sgt. Rivera, and Cpl. Alva because of their subjective knowledge and intentional failure to their responsibilities for the assault, retaliation, harassment, tactics, humiliation, physiological distress, fear and violation of Plaintiff's rights.  Plaintiff has not alleged factual support that any supervisor, participated in or directed any constitutional violation or that he implemented a policy so deficient that it was the moving force of any constitutional violation, except as noted below. Plaintiff's allegations are conclusory that each supervisory defendant "failed to protect," Plaintiff from harm. Such conclusory allegations are insufficient to state a claim for supervisory liability.  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

To the extent Plaintiff alleges there is an "unwritten policy" or custom, that if a supervisor were forced to move the aggressive inmate, then s/he would be forced to implement a group punishment on the whole housing module, the Court declines to infer this "unwritten" classification/disciplinary policy itself is a repudiation of the constitutional rights absent factual support as to the specific policy, why is it violative and who is responsible for such a policy. Plaintiff has been unable to cure this deficiency.

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates[.]" *Starr*, 652 F.3d at 1208. However, a "failure to train" theory can be the basis for a supervisor's liability in only limited circumstances, such as where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. *See Canell v. Lightner*, 143 F.3d 1210, 1213–14 (9th Cir. 1998). To impose liability under a failure to train theory, a plaintiff must demonstrate the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. *Id.* at 1214; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989); *Lee v.*

*City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).

Plaintiff's conclusory assertions that the supervisory defendants received his notices are not sufficient to state a cognizable claim. Plaintiff's recitation of the elements of a claim is likewise not sufficient. Plaintiff has not demonstrated that any training was inadequate, that the inadequate training was a deliberate choice on the part of the supervisory defendants, or that the inadequate training caused the constitutional violation(s).

### *Monell* Liability

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell,* 436 U.S. at 690; however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, *see Board of Cty. Comm'rs. of Bryan Cty. v. Brown,* 520 U.S. 397, 403 (1997); *Monell,* 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). Local governing bodies therefore may be sued directly under § 1983 for monetary, declaratory or injunctive relief for the violation of federal rights. *See Monell*, 436 U.S. at 690. They are absolutely immune from liability for punitive damages under § 1983, however. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

To impose municipal liability under § 1983 for a violation of constitutional rights resulting from governmental inaction or omission, a plaintiff must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).

A plaintiff can establish this "municipal liability" by:

1. Showing that an officer "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard

8

operating procedure of the local governmental entity";

2. Establishing that the officer who committed the constitutional tort "was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or

3. Proving that an official "with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."

*Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (internal citations and quotation marks omitted). A complaint that simply recites the elements of a *Monell* claim is insufficient to put a municipality on fair notice of the claims against it. *White v. City of Vacaville*, No. 2:12-cv-00515-GEB-GGH, 2012 WL 1455221, at *4-6 (E.D. Cal. Apr. 26, 2012).

A local governmental entity may be liable if it has a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt*, 954 F.2d at 1474). The custom or policy of inaction must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *City of Canton*, 489 U.S. at 389; *Oviatt,* 954 F.2d at 1477 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality opinion)).

Plaintiff appears to challenge two "customs:" (1) underground custom of singling the Plaintiff out and placing him in situation where harm may result, including a custom of discrimination against Plaintiff through officer daily logs where any threat reported by other inmates in the housing module was remedied immediately, and (2) an unwritten policy/or custom, that if a supervisor were forced to move the aggressive inmate, then s/he would be forced to implement a group punishment on the whole housing module with turning the building into administrative segregation.

As to the first "custom," Plaintiff alleges that there is a custom of harassing Plaintiff and failing to protect him, and that Madera County has full knowledge of its officers' retaliation against Plaintiff.  Plaintiff fails to state a claim because it is based on respondeat superior and not on the actions or longstanding customs of Madera County which constitute standard operating

9

procedure.  Plaintiff cannot turn an isolated failure to protect situation into a custom of the Madera County.  Plaintiff has not plead that the "custom" amounts to deliberate indifference to the Plaintiff's constitutional rights.

As to the second "custom" of the supervisor's threat of group punishment if an inmate is moved, Plaintiff has not satisfied *Monell* requirements.  At a minimum, Plaintiff does not have a constitutional right to protect others.  In addition, Plaintiff cannot plead that this "custom" amounts to deliberate indifference to the Plaintiff's constitutional rights.

Plaintiff has not pleaded facts tending to show that a government policy, custom, usage, or practice was the "moving force" behind the alleged violation of his Fourth Amendment rights, see *Monell*, 436 U.S. at 690, 694.  The amended complaint does not allow for a reasonable inference that Madera had a "formal government policy" or "longstanding practice or custom which constitutes [its] standard operating procedure." *See Gillette*, 979 F.2d at 1346.  Plaintiff's conclusory allegations of a policy/custom do not support an inference that the practices were widespread and so well settled as to constitute a custom or usage. Plaintiff's allegations merely attempt to impose respondeat superior liability.  Aside from his own experience, Plaintiff does not reference any specific instances of unlawful conduct or events that form the basis for a culture of inaction.  Plaintiff has been unable to cure this deficiency.

**Failure to Protect – Fourteenth Amendment**

Plaintiff was a pretrial detainee at the county jail when the incident giving rise to his second amended complaint occurred. Therefore, Plaintiff's rights as a pretrial detainee, as opposed to a convicted prisoner, arise under the Fourteenth Amendment instead of the Eighth Amendment; however, the standard of review is largely the same. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc) (under both the Eighth and Fourteenth Amendments, the plaintiff must show that the defendants acted with deliberate indifference).  As a pretrial detainee, Plaintiff has the right to be protected from assault by other detainees. *Castro*, 833 F.3d at 1068.

The Ninth Circuit has analyzed such conditions of confinement claims under an objective deliberate indifference standard. *See Castro*, 833 F.3d at 1071 (adopting objective deliberate

indifference standard based on *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), to evaluate failure to protect claim brought by pretrial detainee). That standard demands that: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro*, 833 F.3d at 1071.

Liberally construing the allegations in the second amended complaint, Plaintiff states a cognizable claim against Guzman 1, Guzman 2, Sheilds, Sgt. Rivera, and Cpl. Alva.  Plaintiff fails to state a cognizable claim against any other defendant.  The second amended complaint fails to aver that the other defendants were aware of facts from which the officer could infer that Plaintiff was under a substantial risk of harm or had time to intervene to stop the particular attack. Plaintiff lumps the remaining defendants together and alleges Plaintiff alerted some defendants to a generalized fear of attack.  Generalized fears of attack at not sufficient to state a claim. "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to [an inmate's] future health." *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (citation omitted). A prison official need not "believe to a moral certainty" that an inmate is at risk of harm "before [he] is obligated to take steps to prevent such an assault," but "he must have more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (A "mere suspicion that an attack will occur" is not enough to support a cognizable claim) (citation omitted).  Each act by each defendant must be viewed separately and not in combination with other defendants.  Plaintiff's broad allegation that he was at risk from the transferred, violent inmate is too general and speculative to state a claim that any defendant acted with deliberate indifference to Plaintiff's safety by bringing this inmate into the module.

**Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to

11

petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 5527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges that he filed civil lawsuits and filed grievances which are protected conduct.  But it is unclear who took an adverse action, **because of** this conduct, in that Plaintiff does not allege that each of the specific defendants knew of and acted because of the protected conduct.  It appears the aggressive inmate was moved into a dormitory setting and not merely into Plaintiff's cell. Further, Plaintiff fails to allege that each of the defendant's conduct chilled Plaintiff's First Amendment rights, that did not advance a legitimate correctional goal.  Plaintiff must allege facts for each element of a retaliation claim for each defendant.

**Conspiracy**

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). "Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). For a section 1983 conspiracy claim, "an agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." *Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989). To establish a cognizable claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from

12

that agreement.  *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).

Plaintiff's allegations of conspiracy under § 1983 fail to state a claim because his allegations are conclusory and merely speculative. Plaintiff alleges that the aim of the conspiracy was to increase Plaintiff's suffering, to damage Plaintiff's mental and physical health and retaliate against him. Plaintiff's conspiracy claim, if any, lacks specificity. Plaintiff's suggestion of conspiracy is speculative as he presents no facts to show a meeting of the minds to violate his constitutional rights.  Plaintiff cannot allege a "conspiracy" against a group of defendants without alleging what each Defendants did or did not do which resulted in an actual deprivation of his rights.  Plaintiff does not provide any specific facts showing that any of the Defendants had an agreement to violate his constitutional rights. He must link each defendant to the conspiracy and an actual deprivation of those rights resulting from that agreement.

### State Law Claims and Title 15/Prison Policy Violations

To the extent Plaintiff alleges state law claim, the Complaint does not allege that Plaintiff complied with the exhaustion requirements of the Government Claims Act ("GCA") as to his pendent state law claims. Cal. Gov't Code §§ 905, 905.2, 910, 911.2, 945.4, 950–950.2. Under the GCA, a claimant may not maintain a state law tort cause action for damages against a public employee or "local public entity" unless he has first presented a written claim to the state Victim Compensation and Government Claims Board, and the Board has acted on it. See Cal. Gov't.Code §§ 900.4, 905, 905.2, 945.4, & 950.2. State law claims are subject to dismissal for failure to comply with GCA. *See Karim–Panahi v. LA. Police Dep't*, 839 F.2d 621, 627 (9th Cir.1988). If Plaintiff has not done so, he must submit any such claim "not later than six months after the accrual of the cause of action." *See* Cal. Gov't.Code § 911.2. Because Plaintiff does not affirmatively allege compliance with the GCA, the Complaint facially fails to state a tort claim for negligence.

To the extent Defendants are alleged to have failed to comply with applicable prison regulations, rules, or policies, these deprivations do not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See*, *e.g.*, *Nible v. Fink*, 828 F. App'x. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of

13

Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (explaining all section 1983 claims must be premised on violation of federal constitutional right); *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (explaining state departmental regulations, like CDCR operations manual, do not establish a federal constitutional violation); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *4 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Tirado v. Santiago*, No. 1:22-cv-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (same).

**Unknown Defendants**

Plaintiff alleges Doe defendants and defendants identified as Guzman 1 and Guzman 2. Plaintiff is advised that Guzman 1 and Guzman 2 defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for Guzman 1 and Guzman 2.

**IV.    Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's second amended complaint (ECF No. 16) states a cognizable claim against Defendants Guzman 1, Guzman 2,[2] Sheilds, Sgt. Rivera, and

---

[2] Plaintiff is advised that Defendants Guzman 1 and Guzman 2 act as John Doe defendants (i.e., an unknown defendant) and cannot be served by the United States Marshal until Plaintiff has identified him or her as an actual individual. Plaintiff will be required to identify him or her with enough information to locate the defendant for service of process. Plaintiff will be given the "'opportunity through discovery to identify the unknown [Doe] defendants.'" *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (quoting *Gillespie*, 629 F.2d at 642). Once the identity of the Doe defendant is ascertained, Plaintiff must file a motion to amend his complaint

14

Cpl. Alva for failure to protect in violation of the Fourteenth Amendment.  However, Plaintiff's second amended complaint fails to state any other cognizable claims for relief against any other defendants.

It is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's second amended complaint against Defendants Guzman 1, Guzman 2,  Sheilds, Sgt. Rivera, and Cpl. Alva for failure to protect in violation of the Fourteenth Amendment; and

2.  All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **June 11, 2026**                                      /s/ *Barbara A. McAuliffe*
                                                                         UNITED STATES MAGISTRATE JUDGE

---

only to substitute a name for John Doe so that service by the United States Marshal can be attempted.